UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEVI A. LAKE, <br><br> Plaintiff, <br><br> v. <br><br> MTGLQ INVESTORS, L.P., et al., <br><br> Defendants. | CASE NO. C17-0495JLR <br><br> ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Before the court are Defendant MTGLQ Investors, L.P.'s ("MTGLQ") motion for summary judgment (Def. Mot. (Dkt. # 33)), and Plaintiff Levi A. Lake's cross-motion for summary judgment (Pltf. Mot. (Dkt. # 37)). Defendant New York Community Bank as Servicer for the Federal Deposit Insurance Corporation ("FDIC") as Receiver for Ohio Savings Bank AKA Amtrust Bank ("NYCB") joins MTGLQ's motion for summary judgment. (Joinder (Dkt. # 36).)

//

The court has considered the parties' submissions, the relevant portions of the record, the judicially noticed public records as described in this order, and the applicable law. Being fully advised,[1] the court GRANTS MTGLQ and NYCB's (collectively, "Defendants") motion for summary judgment and DENIES Mr. Lake's cross-motion for summary judgment.

## II. BACKGROUND

This case arises from a nonjudicial foreclosure. Mr. Lake seeks to quiet title to the property in question. (SAC (Dkt. # 28) ¶ 37.) On November 7, 2005, Mr. Lake refinanced the existing promissory note on his home with a loan from Premier Financial Services, Inc. ("Premier"). (*Id.* ¶ 6.) The loan is secured by a deed of trust encumbering Mr. Lake's residence (the "Property"). (1st McIntosh Decl. (Dkt. # 9), Ex. A (attaching the deed of trust).) The deed of trust lists Mr. Lake as the borrower, Premier as the lender, and Fidelity National Title as the trustee. (*Id.* at 2.)[2] In addition, the deed of trust lists MERS as the beneficiary, solely as nominee of the lender and the lender's successors and heirs. (*Id.*)

//
//

---

[1] No party requested oral argument, and the court determines that oral argument would not help its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court takes judicial notice of the matters of public record appended to the declarations of Joseph W. McIntosh and Levi A. Lake (*See* 1st McIntosh Decl. (Dkt. # 9); 2nd McIntosh Decl. (Dkt. # 18); Lake Decl. (Dkt. # 16).) Under Federal Rule of Evidence 201, a court may take judicial notice of matters of public record. *See Coto Settlement v. Elsenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Simmons First Nat'l Bank v. Lehman*, No. C-13-02876 DMR, 2015 WL 632393, at *1 (N.D. Cal. Feb. 13, 2015) (taking judicial notice of official public records of the County Recorder's Office in ruling on a motion for summary judgment).

The promissory note was subsequently transferred. (*See* Sahyers Decl. (Dkt. # 20), Ex. A (attaching Mr. Lake's promissory note).) The note bears two indorsements: (1) from Premier to Ohio Savings Bank, without recourse, dated November 7, 2005, and (2) a blank indorsement, without recourse, executed by Robert Diamond, an Ohio Savings Bank authorized agent. (*Id.*) The deed of trust was also subsequently assigned. The deed of trust was assigned from MERS to New York Community Bank on October 25, 2010. (SAC ¶ 8; Lake Decl., Ex. C.)) NYCB assigned the deed of trust to Nationstar Mortgage LLC ("Nationstar") on August 25, 2011. (SAC ¶ 9; Lake Decl., Ex. D.) Nationstar assigned the deed of trust to MTGLQ on January 17, 2017. (SAC ¶ 11; Lake Decl., Ex. E.)

Despite occupying the Property, Mr. Lake ceased payments on his loan in 2010. (SAC ¶ 7.) On August 5, 2010, AmTrust Bank, as servicer of the loan, notified Mr. Lake that he was in default and that AmTrust would accelerate the remainder of the amount owed if Mr. Lake did not make a payment within 30 days. (*Id.* ¶ 14.) Mr. Lake made no payments. (*Id.*)

In May 2015, Nationstar, which was now the servicer of the loan for Fannie Mae, hired Quality Loan Service Corporation of Washington ("Quality") to advance a non-judicial foreclosure of the Property. (*See* Herbert-West Decl. (Dkt. # 34) ¶ 4; SAC, Ex. E ("Not. of Default") at 1.) In December 2015, Nationstar appointed Quality as successor trustee and provided Quality with a declaration stating that Nationstar was now the holder of Mr. Lake's promissory note. (*See* Herbert-West Decl., Ex. A ("Successor Appointment"), Ex. B ("Nationstar Beneficiary Decl.").) On January 29, 2016, Quality

served a notice of default on the Property. (Not. of Default). The notice identifies Fannie Mae as the owner and Nationstar as the loan servicer. (*Id.*) In April 2017, Quality obtained a declaration stating that MTGLQ was now the holder of Mr. Lake's note, and issued a notice of trustee's sale identifying MTGLQ as the beneficiary. (*See* Herbert-West Decl., Ex. C ("MTGQL Beneficiary Decl."); 2nd McIntosh Decl. ¶ 2, Ex. A ("Notice of Tr. Sale").)

Mr. Lake filed this action in King County Superior Court on March 15, 2017. (*See* Compl. (Dkt. # 1-1).) MTGLQ removed the action to this court and filed a motion to dismiss the complaint. (Not. of Rem. (Dkt. # 1); MTD (Dkt. # 8).) Before the court ruled on that motion, Mr. Lake filed an amended complaint. (*See* FAC (Dkt. # 13).)[3] The court granted MTGLQ's motion to dismiss and dismissed Mr. Lake's first amended complaint with leave to amend. (*See* 6/12/2017 Order (Dkt. # 25).)

On June 30, 2017, Mr. Lake timely filed a second amended complaint, naming MTGLQ and NYCB as defendants.[4] (*See* SAC ¶¶ 2-3.)[5] Mr. Lake seeks to quiet title on the theory that Quality lacked authority to issue the notice of default, and any foreclosure action is now time-barred. (*See id.*) On July 20, 2017, MTGQL filed a motion for

---

[3] Mr. Lake also filed and subsequently withdrew a motion to remand. (*See* Mot. to Remand (Dkt. # 15); Not. to Withdraw Mot. to Remand (Dkt. # 22).)

[4] Mr. Lake's complaint names as defendant "Ohio Savings Bank aka AmTrust Bank" (SAC ¶ 3), but NYCB appears "as servicer for FDIC as receiver for Ohio Savings Bank aka Amtrust Bank" (*see* Not. of Appearance (Dkt. # 35)).

[5] Throughout MTGLQ's motion for summary judgment, MTGLQ refers to Mr. Lake's second amended complaint as his "Third Amended Complaint ('TAC')." (*See* Def. Mot. at 1 n.1.) Although MTGLQ uses a different nomenclature, MTGLQ and the court refer to the same filing, which is docket number 28.

summary judgement.  (*See* Def. Mot.)  On July 28, 2017, NYCB filed a joinder to MTGLQ's motion for summary judgment.  (*See* Joinder.)  On August 4, 2017, Mr. Lake filed a cross-motion for summary judgment.  (*See* Pltf. Mot.)  The cross-motions for summary judgment and the motion to join are now before the court.[6]

### III.  ANALYSIS

**A.  Legal Standards**

    1.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine dispute of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  A material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If

---

[6] On August 28, 2017, MTGLQ filed a notice that Mr. Lake filed for bankruptcy on August 24, 2017.  (*See* Notice (Dkt. # 41).)  MTGLQ argues that Mr. Lake's bankruptcy does not preclude the court's consideration of this motion for summary judgment.  (*Id.* at 1.)  The court agrees.  The automatic stay under the Bankruptcy Code "does not prevent . . . a defendant from protecting its interests against claims brought by the debtor."  *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 875 (9th Cir. 2011).  The automatic stay applies only to actions "against the debtor."  *See* 11 U.S.C. § 362(a)(1) (stating that a bankruptcy petition "operates as a stay . . . of . . . the commencement or continuation . . . of a judicial . . . action against the debtor").  Thus, a bankruptcy stay does not preclude the court from ruling on a dispositive motion filed by a defendant in a debtor's pre-bankruptcy petition lawsuit.  *See Petheram v. Wells Fargo Bank*, No. C13-1016JLR, 2013 WL 4761049, at *2 (W.D. Wash. Sept. 3, 2013) (granting the defendants' motion to dismiss the plaintiff's complaint even though the plaintiff filed for bankruptcy).

the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present significant and probative evidence to support its claim or defense. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2011) (internal quotation marks and alterations omitted). Thus, "the court must review the evidence submitted in support of each cross-motion." *Id.*

   2. <u>Washington's Deed of Trust Act</u>

The Washington Deed of Trust Act ("DTA"), RCW ch. 61.24, governs statutory deeds of trust in Washington and establishes the procedures required for nonjudicial foreclosure. *See Massey v. BAC Home Loans Servicing LP*, No. C12-1314JLR, 2012 WL 5295146, at *1 (W.D. Wash. Oct. 26, 2012). Under the DTA, a deed of trust is a form of three-party mortgage, involving not only a lender and a borrower, but also a neutral third-party called a trustee. *See Buse v. First Am. Title Ins. Co.*, No. C08-0510MJP, 2009 WL 1543994, at *1 (W.D. Wash. May 29, 2009). The trustee holds an interest in the title to the borrower's property on behalf of the lender, who is also called the beneficiary. *Id.*

Should the borrower default on his loan, the beneficiary need not petition a court to initiate foreclosure proceedings but may instruct the trustee to conduct a non-judicial foreclosure. RCW § 61.24.010(2), .020, .030. The beneficiary may replace the trustee with a successor trustee to initiate the foreclosure. RCW § 61.24.010(2). Before initiating foreclosure, the trustee confirms that the beneficiary is entitled to enforce the note by obtaining a declaration from the beneficiary that it is "the actual holder of the note." RCW 61.24.030(7)(a); *Brown v. Wash. State Dep't of Commerce*, 359 P.3d 771, 784 (Wash. 2015).

Traditionally, the beneficiary of a deed of trust was "the lender who has loaned money to the homeowner." *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 36 (Wash. 2012). But lenders "have long been free to sell that secured debt, typically by selling the promissory note signed by the homeowner," and so the DTA defines "beneficiary" more broadly as "'the holder of the instrument or document evidencing the obligations secured by the deed of trust.'" *Id.* (quoting RCW § 61.24.005(2)). In *Bain v. Metropolitan Mortgage Group, Inc.*, the Washington Supreme Court interpreted the DTA's definition of "beneficiary" and held that a DTA beneficiary must be the "holder of the promissory

//
//
//
//
//
//

note." *Id.* at 36, 43. Thus, the Mortgage Electronic Registration System Inc. ("MERS")[7] could not lawfully foreclose because MERS was not the holder of the note, even though the deed of trust listed MERS as the "beneficiary" and MERS was purportedly "the holder of the deed of trust." *Id.* at 42-44.

"Holder" status, and thus DTA beneficiary status, turns on possession of the note, not ownership. In other words, a "holder" does not need to own the note to be the DTA beneficiary. *Brown*, 359 P.3d at 784. Although the initial lender is both the owner of the note (the party with the beneficial interest who is entitled to the payments on the note and/or the proceeds of a foreclosure sale) and the holder of the note (the statutory beneficiary entitled to enforce the note, foreclose, and negotiate modifications), those rights are often separated when the lender sells the note on the secondary market. *See Marts v. U.S. Bank Nat'l Ass'n*, 166 F. Supp. 3d 1204, 1209 (W.D. Wash. 2016); *Brown*, 359 P.3d at 779. In *Brown v. Washington State Department of Commerce*, the Washington Supreme Court held that a loan servicer was the DTA beneficiary because it was the holder of the note, even though Freddie Mac owned the beneficial interest. 359 P.3d at 784.

---

[7] As explained by the Washington Supreme Court:

In the 1990s, [MERS] was established by several large players in the mortgage industry. MERS and its allied corporations maintain a private electronic registration system for tracking ownership of mortgage-related debt. This system allows its users to avoid the cost and inconvenience of the traditional public recording system and has facilitated a robust secondary market in mortgage backed debt and securities. Its customers include lenders, debt servicers, and financial institutes that trade in mortgage debt and mortgage backed securities, among others.

*Bain*, 285 P.3d at 36

In concluding that the loan servicer was the holder of the note, the court looked to the definition of "holder" in Washington's Uniform Commercial Code: the "'person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.'" *Id.* at 778 (quoting RCW § 62A.1-201(21)(A)). If a note is endorsed in blank it is "payable to bearer and may be negotiated by transfer of possession alone." RCW 62A.3-205(b). Therefore, the loan servicer was the holder because it possessed the note endorsed in blank. *Brown*, 359 P.3d at 783. The court noted that the definition of holder focuses on possession of the note rather than ownership "in order to protect the borrower from being sued fraudulently or by multiple parties on the same note." *Id.* at 778-79. "After discharging its obligations to the [person entitled to enforce the note], the borrower cannot thereafter be held liable on the note by another party, such as the note owner." *Id.* at 779. "'A [borrower] cannot object to suit by the payee-holder on the ground that a third person has some interest in the proceeds of the note, as such right is against the holder and does not affect the liability of the [borrower] on his or her note.'" *Id.* (quoting 5A ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-301:6, at 568-69).

**B.     Cross-Motions for Summary Judgment**

Mr. Lake seeks to quiet title to the Property under RCW 7.28.300 on the grounds that an action to foreclose his deed of trust is barred by the statute of limitations. (SAC ¶¶ 18, 36.); RCW § 7.28.300 (providing a cause of action for "[t]he record owner of real estate" to "maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust

would be barred by the statute of limitations"). The parties do not dispute that Quality commenced foreclosure proceedings by issuing a notice of default on January 29, 2016, before the expiration of the statute of limitations on September 5, 2016. (*See* Notice of Default; *see generally* SAC.) Instead, Mr. Lake alleges that Quality was not a validly appointed trustee and so the foreclosure proceedings were not lawfully commenced within the limitations period. (*See* SAC ¶ 21 ("Quality was never a legally appoint[ed] Trustee and had no legal authority to issue a Notice of Default and . . . Notice of Trustee's Sale.").) Mr. Lake alleges that Nationstar was never the holder of Mr. Lake's promissory note, so Nationstar could not act as the note's beneficiary by appointing Quality to conduct foreclosure proceedings. (*See id.* ¶ 12.) He further contends that MTGLQ is not the present holder of the note and thus lacks authority to continue foreclosure efforts. (*See id.* ¶ 15.)

Defendants argue that they are entitled to summary judgment because the evidence shows that Nationstar lawfully appointed Quality as trustee pursuant to Washington's Deed of Trust Act. (*See* Def. Mot. at 3.) Defendants contend that "Nationstar held the Note, endorsed-in-blank, and was therefore the Deed of Trust 'beneficiary' with the authority to appoint Quality as successor trustee." (*Id.*) Defendants further contend that MTGLQ is the present holder of the note with the authority to foreclose. (*Id.* at 4.) MTGLQ submits evidence showing that prior to issuing the notice of default, Quality obtained from Nationstar (1) a copy of Mr. Lake's promissory note endorsed in blank and (2) a beneficiary declaration in which Nationstar states that it is "the actual holder of the promissory note." (*See* Herbert-West Decl. at 2; Nationstar Beneficiary Decl.). MTGLQ

also submits evidence that prior to issuing the notice of trustee's sale, Quality obtained a beneficiary declaration from an authorized agent of MTGLQ stating that MTGLQ is "the actual holder of the promissory note." (*See* MTGLQ Beneficiary Decl.) Finally, MTGLQ submits a declaration from MTGLQ's loan servicer (1) averring that its business records indicate the original promissory note is currently held by MTGLQ and (2) attaching a copy of the promissory note endorsed in blank. (*See* Sahyers Decl. at 2, Ex. A.)

Mr. Lake opposes Defendants' motion and argues that he is entitled to summary judgment. (*See generally* Def. Mot.) Mr. Lake does not present evidence that contradicts MTGLQ's declarations. Instead, his arguments rely on three legal theories: (1) that MTGLQ is required to produce the original note; (2) that the assignment of his deed of trust to Nationstar and subsequently to MTGLQ was invalid; and (3) that the securitization of his note impedes foreclosure. (*See* Pltf. Mot.) Mr. Lake's legal theories fail as a matter of law.[8]

1. Production of the Original Note

Mr. Lake argues that he is entitled "to see the note endorsed in blank." (Pltf. Mot. at 5.) To the extent that Mr. Lake argues that MTGLQ must produce the original note for

---

[8] In addition to matters of public record of which the court has taken judicial notice (*see supra* § II. n.2), Mr. Lake relies on various exhibits attached to his second amended complaint and cross-motion for summary judgment to support his theories (*see* Pltf. Mot. at 8). These exhibits include correspondence he received from a number of entities relating to his loan. (*See* SAC, Ex. C-D; Pltf. Mot. at 10, Ex. H.) MTGLQ contends that at least one exhibit Mr. Lake relies on is hearsay. (*See* Reply (Dkt. # 39) at 2.) A court may not consider hearsay evidence in deciding whether material facts are at issue in summary judgment motions. *Steven N.S. Cheung, Inc. v. United States*, No. C04-2050RSM, 2006 WL 2473487, at *3 (W.D. Wash. Aug. 28, 2006) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995)).

him to see, courts in this district have repeatedly concluded "[t]here is no requirement that the foreclosing party show the borrower the actual note." *Blake v. U.S. Bank Nat. Ass'n*, No. C12-2186MJP, 2013 WL 6199213, at *2 (W.D. Wash. Nov. 27, 2013), *aff'd sub nom. Blake v. U.S. Bank NA*, 671 F. App'x 983 (9th Cir. 2016) ("Under Washington law, the only proof of beneficial ownership required prior to foreclosure is a 'declaration by the beneficiary made under penalty of perjury stating that the beneficiary is the actual holder of the promissory note.'"). Mr. Lake contends that a copy of the note endorsed in blank is not in the record. (*See* Pltf. Mot. at 5.) But contrary to his assertions, MTGLQ submitted a copy, which is in the record attached as an exhibit to the Declaration of Christine Sahyers. (*See* Sahyers Decl., Ex. A.) Any claim that Quality cannot properly foreclose unless MTGQL shows Mr. Lake the original note fails as a matter of law.

    2. <u>Validity of the Assignment of the Deed of Trust</u>

Second, Mr. Lake alleges that the assignment of his deed of trust from MERS to NYCB was invalid because MERS is not a lawful beneficiary. (SAC ¶ 9; Pltf. Mot. at 2 (citing *Bain*, 285 P.3d 34).) As a result, he contends, the subsequent assignments of his deed of trust from NYCB to Nationstar and from Nationstar to MTGLQ were invalid. (SAC ¶ 9.) However, the DTA "contemplates that the security interest will follow the note, not the other way around." *Bain*, 285 P.3d at 44. The "transfer of the [note] alone will carry the [deed of trust] along with it." *Bavand v. OneWest Bank*, 385 P.3d 233, 248

//

---

The court need not decide whether it may properly consider Mr. Lake's exhibits; even if the court were to consider the exhibits as evidence of facts to support Mr. Lake's legal theories, the facts are not material because Mr. Lake's legal theories fail as a matter of law.

(Wash. Ct. App. 2016), *as modified* (Dec. 15, 2016) (internal quotation marks omitted) (alteration in original). Thus, "the noteholder is entitled to enforce both the note and the [deed of trust] by operation of law." *Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17-0061JLR, 2017 WL 2311662, at *4 (W.D. Wash. May 25, 2017). In other words, the power to initiate foreclosure lies with the holder of the promissory note "regardless of any assignment of the deed of trust." *Blake*, 2013 WL 6199213, at *2 (W.D. Wash. Nov. 27, 2013); *see, e.g.*, *Ukpoma v. U.S. Bank Nat. Ass'n*, 12-CV-0184-TOR, 2013 WL 1934172, at *3 (E.D. Wash. May 9, 2013) ("[B]y virtue of being in possession of the note . . . . [U.S. Bank's] right to receive payment on the note does not depend upon any assignment of the note."); *Massey v. BAC Home Loans Servicing LP*, No. C12-1314JLR, 2013 WL 6825309, at *6 (W.D. Wash. Dec. 23, 2013) ("Bank of America's authority to foreclose on the loan stemmed from the fact that Bank of America held the Note," and therefore plaintiff's "argument that the Assignment [of the deed of trust] is 'without effect and a nullity' . . . is beside the point.").

Furthermore, Mr. Lake lacks standing to challenge the assignments of his deed of trust. *See Gelinas v. Bank of Am., N.A.*, No. 16-1355RAJ, 2017 WL 1153859, at *2-3 (W.D. Wash. Mar. 28, 2017). A borrower, as a third party to the assignment of his deed of trust, "cannot mount a challenge to the chain of assignments unless [he] has a genuine claim that [he is] at risk of paying the same debt twice if the assignment stands." *Borowski v. BNC Mortg. Inc.*, No. C12-5867RJB, 2013 WL 4522253, at *5 (W.D. Wash. Aug 27, 2013). Mr. Lake does not allege that any party other than MTGLQ claims to be in possession of his note or that multiple parties have demanded payment from him. (*See*

*generally* SAC; Plt's Mot.) His contention that another party could "come forward at some future date, and present[] the note" is too speculative to demonstrate a genuine claim of risk, and is directly contradicted by MTGQL's proof that it possesses the original note. (SAC ¶ 14). Accordingly, there is no reason to find that Mr. Lake is at risk of paying the same debt twice.

Relatedly, Mr. Lake contends that neither Nationstar nor MTGLQ ever acquired a beneficial interest in the note. (SAC ¶ 9.) Mr. Lake's contention appears to stem from the misunderstanding that the note follows the deed of trust, which, as explained above, is not the law in Washington. Even if Nationstar and MTGLQ never acquired a beneficial interest in the note, DTA beneficiary status depends on whether a party possesses the note, not whether a party is the owner entitled to the economic benefits of the note. *See Brown*, 359 P.3d at 779, 784; *supra* § III.A.2.

   3. Securitization

Mr. Lake's arguments suggest that the securitization of his loan is an impediment to foreclosure. (*See* SAC ¶ 25; Pltf. Mot. at 5.) However, this contention also lacks merit because "the authority to foreclose on a defaulting loan remains with the noteholder when a loan is securitized." *Blake*, 2013 WL 6199213, at *3. The theory that the securitization of a note voids a borrower's debt obligations has been rejected by numerous Washington courts. *See Pearse v. First Horizon Home Loan Corp.*, No. C16-5627BHS, 2016 WL 5933518, at *7 (W.D. Wash. Oct. 12, 2016) (collecting federal and state cases).

Because Mr. Lake's legal theories fail as a matter of law, he is not entitled to summary judgment. Defendants have demonstrated that Nationstar held the note

endorsed in blank, and was thus the proper DTA beneficiary with the authority to appoint Quality to issue the notice of default. (*See* Herbert-West Decl., Ex. B, C); *Brown*, 359 P.3d at 784. At the summary judgment stage, Mr. Lake cannot rely upon the mere allegations in his pleadings that Nationstar and MTGLQ were "never . . . 'Holder[s] of the note' at any time" (SAC ¶ 10; *see id.* ¶ 15; Pltf. Mot. at 3), but must present "significant probative evidence" to support his claim, *Intel Corp.*, 952 F.2d at 1558. Because Mr. Lake has not met this burden, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. Accordingly, the court grants Defendants' motion for summary judgment and denies Mr. Lake's motion for summary judgment.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Defendants' motion for summary judgment (Dkt. # 33); DENIES Mr. Lake's motion for summary judgment (Dkt. # 37); and DISMISSES Mr. Lake's second amended complaint with prejudice (Dkt. # 28).

Dated this 1st day of September, 2017.

JAMES L. ROBART
United States District Judge